The next matter, number 231069, Stephen Foote et al. v. Ludlow School Committee et al. At this time, would counsel for the appellants please introduce themselves on the record to begin. Yes, may it please the court. Mary McAllister representing the appellants, Stephen Foote and Marissa Silvestri, and also with me there my co-counsel, Bernadette Royals and Sam Whiting. Your Honor, I would like to request three minutes for rebuttal. You may. When children say they identify as something other than their sex at school, do they become mere creatures of the state or do their fit parents still have the fundamental right to make decisions regarding their care? According to defendants, when the issue is a child's gender identity, fit parents lose their rights as primary decision makers and are prohibited from receiving information regarding that issue unless their child consents. The district court found defendants' concealment protocol disconcerting, but nevertheless granted the motion to dismiss after mislabeling and disregarding many of plaintiff's allegations as conclusory, failing to view them in light most favorable to plaintiffs, and then concluding there were insufficient facts to state even a plausible claim for relief. This court should reverse the district court's dismissal of plaintiff's amended complaint for three reasons. The court mischaracterized plaintiff's claims based on parents' rights to direct their children's education instead of the right to make decisions related to the children's upbringing, including mental health decisions. The court misapplied the shock of the conscience test to plaintiff's fundamental parental rights claims. And the court deviated from the motion to dismiss standard to wrongly conclude that the plaintiffs failed to state a plausible claim for violation of the right to make mental health decisions for their children. Counsel, can I ask you, let me sure I understand the scope of your argument here. And I ask that in part because of the amicus, several of the amicus briefs that were filed here, and I know you're not responsible for those, but they, several of those briefs suggest that it's important to distinguish between executive action and legislative action. I understand your argument to be, because this is how you presented the case below, and I think that's how I read your briefs, that you view this, that is the action of the school committee, as unequivocally in the category of executive action. And that's why you are focusing on the shock, the conscience standard. Is that a fair reading of the argument that you were making here today? Yes, Your Honor, that was what was presented below. But the district court was in error because they did not make that differentiation on the shock, the conscience. The district court merely came to the conclusion that it needed to, they came and used the highest possible standard under the executive action. Because the Supreme Court in Lewis said there was a differential standard for executive action, and the extreme high threshold shock, the conscience, is for exigent actions, such as in Lewis where you had a police chase, and in many of the other cases relied on by the district court, where you had first responders having to make life or death immediate decisions, therefore their behavior would be judged by a much higher standard. But when you have a deliberative action, but more time to deliberate, as was true here, and has been true in other cases, then deliberate indifference can be sufficient. Well, that's the point. Even if deliberate indifference is a fair way of characterizing the type of decision, there was a deliberative process here, and you might be able to say that that deliberative process reflected some indifference to important rights of the petitioner. The fact finder still has to conclude that that deliberate indifference shocked the conscience. It doesn't disappear from the analysis, does it? Well, not entirely. When you're dealing with a fundamental right, when you're dealing with a significant interference with a protected right, that in and of itself can shock the conscience. That's what this court said in McConkie, that shock the conscience can be either a physical or a psychological set of circumstances, or it can be a significant interference with a protected relationship, such as the parent-child relationship. And the court in McConkie then cited to Grindel, a main district court case, in which the court found that very thing, that an interrogation of a child in which the interrogator was casting aspersions on the child's family and trying to get the child to implicate the family in drug dealing, the main district court said that was enough to shock the conscience because it cut right into the heart of the family relationship, and it significantly interfered with the parent's relationship and decision-making with their child, and that that shocked the conscience. Counsel, can I ask you a question along these same lines? I'm just trying to clarify your argument as well. So are you arguing for counts one and three that you did need to meet the shock the conscience test, but that you met it, or that you just didn't need to meet it at all? If the court found a significant interference with the parental rights, that met the shock the conscience test. Alternatively, deliberate indifference, which we have alleged in the complaint, of course we're at a motion to dismiss phase here, so we don't have an evidentiary record, but the allegations of the complaint clearly laid out at least deliberate indifference, if not reckless disregard, and so even if the significant interference with the parental right itself isn't found to shock the conscience, which McConkie said it can, then certainly deliberate indifference for a deliberative act has been met by our allegations in our complaint. Counsel, aren't you conflating the concept of interference with a right with the shock the conscience analysis? Our cases suggest, based on Supreme Court precedent, that there's actually a two-step or two-tier process. First, the fact finder, the court, looks at the conduct at issue and has to make an initial judgment whether it's so egregious that it shocks the conscience. Once that threshold determination is made, then you examine the right at issue. You seem to be saying that if you determine that there was some impact on the right itself, that is enough to conclude that this was a shock the conscience instance. Isn't that a conflation that our case law does not allow? Not really, Your Honor, because what it's saying is, and this is directly from the McConkie case, conscious shocking conduct usually entails physical or psychological abuse or significant interference with a protected relationship, such as a parent-child relationship. So if there's a finding that there has been a significant interference with a protected relationship under McConkie, that would be conscious shocking conduct. Because there's an or, the or in there means physical or psychological abuse would, or the significant interference. And then the McConkie court referenced Grinnell, which was a significant interference with the parental rights. Do you suggest that the facts of Grinnell are in some way comparable to the facts here? They are somewhat comparable. Obviously, there was a custody situation there. It was an interrogation by a police officer, et cetera. But there was a great deal of similarity because the police officer there was directly challenging the relationship with the parents. The police officer was trying to convince the child that their parents were criminals. They said, don't tell your parents because they'll beat you up if you do, et cetera. And in this case, the defendants, particularly Mrs. Foley, was engaging in private conversations with the child and was questioning her parents' ability to care for her without her parents' knowledge. She was regularly, she met weekly with her and she would regularly say, I don't know that, I can't keep you safe if you're not with me. I don't know that you can be kept safe. I don't know that your parents' counselor is sufficient for you. I'm concerned that you're not getting the support you need. None of which she had any basis for because she'd not spoken to the parents. But she was planting those same doubts and alienating the child from her parents in the same way that the Grinnell case was. And so it is a similar circumstance here that, you know, as the court in Grinnell said, you know, you could have irreparably harmed, it's short of the fabric of the parent-child relationship, love, trust, and faith. And those could have been irreparably harmed. And that's what we're looking at here is because this 11-year-old girl was being told that her parents don't support her, they don't love her, they can't keep her safe, she can't trust them, she can only trust the people at the school. That rips apart the parent-child relationship from that child's perspective. How can she ever trust her parents if the counselor is telling her these things? Counsel, can I ask you, and I don't know if that's already what you were addressing, to move to count two of your complaint, which is about the mental health treatment. Yes, Your Honor. Can you tell us precisely what mental health treatment you contend that the school officials provided here? As you say in the allegations of our complaint, we've cited court cases and expert testimony relied on in court cases that says when a school district engages in what is called social transitioning, which incorporates using a child, a different name for the child, referring to the child as another gender other than what they are, and in some cases permitting them to use facilities for the opposite sex. When that is being done, that is part of, and the courts have concluded, that is part of the treatment that is accorded to children when there is this distress about their gender. So nowhere in the complaint does it say that the children are suffering from gender... Disphoria? Yes. Well, and that's really not a necessary element. We have alleged that the children, particularly the daughter, was having distress about her gender. There was not an allegation that there was an official diagnosis of gender dysphoria, but yet what the school was doing was equivalent to the mental health treatment given to gender dysphoria. Can I just follow up with you on that? Because I understand your allegation that it is important, it can be important, that the sources you've cited show it can be important for an individual's mental health to have their preferred pronouns, names recognized, that that is absolutely shown to be important to mental health. But I'm just wondering, it seems to me that's different than arguing that when others use an individual's preferred pronoun or name, that others are themselves providing mental health treatment. So those seem to be two different things, and I'm wondering if any of your sources support the notion that just by using somebody's preferred pronouns or name, someone is actually providing mental health treatment to that person. Yes, that's what the sources say, is that by engaging, and the WPATH standards and some of the other associations out there, that's what they say, that they say if a child expresses this gender distress, gender dysphoria, then you should use their, people need to use their preferred pronouns, their preferred name, et cetera, in order to help them transition to this other gender. But wouldn't accepting your argument on a plausibility standard, and I completely agree with you, we're at the motion to dismiss stage, so you get all the inferences, but wouldn't that mean concluding that many ordinary people in everyday life are providing mental health treatment when they use people's preferred pronouns? I'm trying to understand how that would be plausible, even under the 12v6 standards, because that's something that many, many people do on an everyday basis, so are they all providing mental health treatment? Not entirely, what this is, of course, this is institutional, this is the school, this is exercising, they're exercising authority over the child. And so they are taking this step, and they have produced this protocol that requires that this be done. And so that would cross the line into mental health treatment. And without the parents' permission. And in many of those cases, Your Honor, you talk about the parents, the parents know, I mean here the parents had no knowledge, they were denied the information they needed to make this decision. Counsel, I'm looking, just to follow up on my colleague's question, I'm looking, for example, at paragraph 42 of your complaint. Yes, Your Honor. And there you say, defendants have known or have reason to know that social transitioning, including assertion of an alternate name and pronouns, is recognized as a medical slash mental health treatment for children with gender dysphoria. There's no contention that the children here are suffering from gender dysphoria. The district court, I think, took the view that the statement in this allegation that assertion of an alternate name and pronoun is recognized as a medical slash mental health treatment, that that is sort of a classic form of a conclusory assertion. You've stated as a legal proposition that the parents have a right to be involved in the mental health treatment of their child. You then make an assertion, an allegation, that the very use of pronouns is a form of medical mental health treatment. I mean, isn't that, again, a classic form of a conclusory assertion that's designed to fit a legal theory? And that's what we're told to be wary of in evaluating the motion to dismiss. So why isn't that problematic in the very way that the district court suggested? Yes, may I respond? You may. Your Honor, the issue is this is not a legal. When you look at the cases that define legal conclusions, both at the Supreme Court and at the First Circuit, they're talking about where you have bare-bone allegations of the elements of a cause of action, he hurt me, I deserve damages, or just rote recitals that don't connect the facts to make these legal conclusions. This, we contend, is not a legal conclusion. This is merely a statement of fact. Similar to stating that chemotherapy is recognized as a treatment for cancer. That's a legal, not legal, it's not a legal conclusion. That's just a statement of fact. And that is what this allegation is, is that courts have recognized that engaging in this conduct is a form of mental health treatment, and that in itself was based on testimony and expert witness testimony in those cases in which the court then made that ruling. Counsel, on this issue, is it relevant that the very guidance from the Massachusetts Department of Education explicitly says, and I'm quoting, there is no threshold medical or mental health diagnosis or treatment requirement that any student must meet in order to have his or her gender identity recognized and respected by a school in the form of honoring the student's request to use the pronouns. The very guidance from the department seems to say explicitly that that does not involve medical diagnosis or treatment. That is, the decision to honor the student's request to use pronouns. Is that relevant at all? That's, of course, a guideline. It is not a law. It is not a legal decision. And so that guideline can be part of it, but it also needs to look at what other courts have determined, and not only the courts, but what they've relied on, the back story to that, is the standards of care that have been published that say that. And so, yes, you can look at the DESE guidance as part of what the requirement is, but that doesn't answer the entire question. And, of course, the main problem here is that the school district concealed all this information from the parents, didn't even give them the opportunity to make a decision and to determine what's best for their child. Thank you, Counsel. Thank you, Your Honor. Thank you. Thank you, Counsel. At this time, would Counsel for the Appellees please introduce themselves on the record if you can. May it please the Court, I'm David Lawless for the defendants at the leaves. Plaintiff's claim as articulated this morning rests on a misconception, and that misconception is that there is a decision to be made with respect to BF and GF's gender identity. Under Massachusetts law, that's simply incorrect. Gender identity is an immutable characteristic. As alleged, these children were able to come forward and identify their gender identities for school employees, and under Massachusetts law and the DESE guidance, nothing more is required for the school to accept their assertion of their gender identities. So the idea that there's a parental decision at the heart of this case is somewhat misleading in as much as you can't decide to have transgender children or not to have transgender children. But, Counsel, isn't the primary argument here that this school developed an unwritten protocol of not disclosing to parents when their children used a different pronoun at school unless the child gave consent? And don't we have to assume that that's true for the purposes of a motion to dismiss that there was such an unwritten policy? Do you contest that? For purposes of this motion, no, Your Honor, or the appeal from the allowance of defendant's motion. And do you agree that such an unwritten policy was not required by Massachusetts anti-discrimination law? The policy itself is not absolutely required by Massachusetts anti-discrimination law. It's certainly suggested by the DESE guidance, but it's not required by Massachusetts anti-discrimination law. I mean, the district court was highly critical of the school committee and explicitly said that in the guidance that there's no disclosure to the parents. It's an absolute policy of the school committee that that policy was inconsistent with the guidance of the Department of Education, which seemed to contemplate there would be a conversation between the school officials and the student before there was disclosure to the parents, but there was no grounding in the Department of Education policy for the no disclosure policy of the school committee. Defendants respectfully disagree with that characterization or that conclusion regarding the DESE guidance. The DESE guidance says you should speak to the children before informing their parents, and it says for the same reason you should talk to the child about pronoun use, proper noun use in communications home. So the DESE guidance doesn't suggest that you will talk to a child, and specifically a child who asks you not to divulge to their parents that they're transgender. It doesn't contemplate that one would speak to a child and then against their wishes out them to their parents. It specifically provides for the use of birth names and pronouns in communications with parents. And I don't think that sentence, which follows the sentence that the district court focused on, can be ignored. But even if defendant's interpretation is wrong, it's still a reasonable reading, minimally, of the DESE guidance. And under that reasonable reading, the individual defendants minimally are protected by qualified immunity. But what about the school committee? As to the school committee, again, Your Honor, well, first of all, again, defendants don't concede the point, but more importantly, the protocol as alleged doesn't shock the conscience, as the district court found. Conduct that shocks the conscience is required, as this court is aware, for all substantive due process claims. This court rejected the proposition that it's not required with respect to fundamental rights in Martinez v. Cui. There, the allegation was that the plaintiff had been digitally raped by a resident in a hospital. And the same argument the plaintiffs have advanced in this case was rejected by this court in Martinez. Isn't there at least a suggestion in the district court's opinion that in applying the shock the conscience standard, it was looking for some form of intentional misconduct, almost an intention to cause harm, which you find in some of the shock the conscience standards? That would seem to be, and I think this is one of the contentions of opposing counsel, that would seem to be an inapt standard to apply in this much more deliberative situation. That seems to apply in maybe the split-second circumstance. We don't have that here, so that focus on an intention to cause harm, that doesn't seem to really work here, does it? I think that there is a spectrum, Your Honor, and Lewis makes this clear, that substantive due process points towards conduct that shocks the conscience very clearly in the extremes. But there's a spectrum of conduct. Conduct that shocks the conscience always has to be unrelated to any governmental interest. It always has to rise or sink to a level that is intolerable in civilized society. The district court properly cited to cases like Heron v. Town of Franklin, which involved the transfer of a flicker permit, where the court made it clear that the shocks of conscience standard isn't really watered down just because you're not dealing with a high-speed police chase or an emergency. Again, Heron dealt with the transfer of the flicker permit. As plaintiffs framed it, any time there's an opportunity to reflect, any time there's any opportunity to deliberate at all, making a wrong decision can shock the conscience, and that's just inconsistent with this court's case law and with the Supreme Court's case law. But, counsel, I don't think that's what they're arguing, that any decision. I think what they're arguing is, and you've agreed, that for purposes of the motion to dismiss days, we have to assume that there was this unwritten policy not to disclose information without the child's consent, and it was not required by Massachusetts anti-discrimination law. So I think what they're arguing is that it shocks the conscience in this more deliberative situation for a school to decide that it's not going to tell parents important information about their children. Do you contest that the information here that they allege was not disclosed is important information for parents to have? It is important information, Your Honor, but on the facts of this case, we also have a circumstance where the child has said, please don't tell my parents. But was there any allegation that these parents were unfit? No, Your Honor, there's no allegation that they're unfit. So, again, I think their argument is that unless there's a finding of unfitness, that it shocks the conscience for schools not to disclose important information about children to their parents, and I'm wondering if you can respond to that. As presented, Your Honor, there's no limiting principle to that. Schools are in possession of a tremendous amount of important information about children's well-being all the time, and they can't be required to pick and choose constantly which information gets shared back. It's just not tenable. Isn't that what they did here? They decided that this was something that shouldn't be shared. As you say, at the child's request, but that was picking and choosing. It was, Your Honor, but my point is only that if one accepts that gender identity must always be disclosed to parents, then there are any number of other important aspects of a child's life and personhood that must also be disclosed to parents. And there's no, as presented by the plaintiffs, there's no limiting principle. But, counsel, that respectfully doesn't seem correct to me. I think gender identity is clearly very important to everyone, and there are many things that happen in school every day that would qualify as less important than that. So do you really see no limiting principle between something like the gender identity of your child and who your child may have played with during recess that day? Are you really saying there's no difference there? No, I'm not saying that there's no difference there. But I think if a child shows up to school, just to give an example, if a child shows up to school and is obviously depressed for six weeks or eight weeks or a year, and that child ultimately commits suicide, and the school hadn't told the parents, we think your child is depressed, that conduct would not shock the conscience. Sorry, conduct would or would not? Would not, would not. I mean, this court has held that in circumstances where a child had been raped, was subject to harassment by classmates, as a result of the rape, was berated by a teacher and sent off the field, and then went and attempted suicide, that conduct didn't shock the conscience. So the mere failure to convey important information doesn't shock the conscience. And it's particularly the case here, where the children requested that the information not be shared, and where the plaintiffs are insisting on notice for the purpose of controlling the child's gender identity. It's important to note. How do you know that? The complaint says so. The complaint says that the plaintiffs were robbed of the opportunity to inform the school that they didn't want the school to respect their children's expression of their gender identity, and that the school, even after the plaintiffs received notice, that BF had come forward, and that occurred within about a week. Once the plaintiffs received notice, the school refused to accept their assertion, the plaintiffs' insistence, that BF's gender identity, preferred pronouns, preferred name, not be utilized in the school. But counsel, I don't think that's all they're alleging, because one of the basic rights that parents have is to decide whether to keep their children in private or public school. If they choose public school, they can't direct everything the school does, of course, but I think one of the things they're saying here is by the school not disclosing important information, they then really lose their ability to make a meaningful decision between do we keep our child in the school, or do we make the decision to place our child in a different school. So can you address that? Based on the facts of this case, as alleged, Your Honor, that choice was never made. So there was one week in which the parents didn't know that BF had asserted BF's gender identity. Thereafter, the parents were well aware of it, and in fact the complaint can be read to suggest that the parents were aware of the gender identity in December. Because the plaintiffs complained, Mom sent an email in December saying, we're addressing the child's mental health issues, please stay away from them. And they complained then that when BF came forward, the defendants didn't act in accordance with that instruction. So the complaint's a little vague in terms of what the parents knew and when, but minimally they knew within a week that BF had come forward. They went to the school, they complained that the school was respecting BF's assertion of gender identity, preferred names and pronouns, and they did not withdraw BF from the school. Counsel, the district court, in its decision, seems to treat this issue of the use, how the school approaches the wishes of the student to be recognized with certain pronouns as somehow comparable to school curriculum, that sort of invoking the line of cases which says that schools are entitled to control the curriculum. Parents do not have a right to tell the schools how to structure the curriculum, how to do the teaching. That strikes me as a bit of a stretch to suggest that this issue relating to anything to do with the curriculum of the school. It doesn't, Your Honor. So you acknowledge that that aspect of the decision is incorrect. But the decision didn't hold that this was a curricular issue. I think that's a mischaracterization that the plaintiffs have made. The court does invoke a line of cases that seem to stand for that proposition. It invokes Parker v. Hurley, which can be read as stating the broader proposition. I mean, if the proposition plaintiffs are advancing is that the state can only control curriculum and everything else that occurs within a school is up to a parent's discretion, that proposition is just incorrect. I mean, in Vernonia School District v. Acton, the Supreme Court held that random year analysis of student-athletes was appropriate. There are cases involving voluntary condom distribution, community service requirements. I mean, the universe of things that are subject to state control in school goes well beyond curriculum. I mean, in fact, we have compulsory education laws that don't have anything to do with curriculum other than to require that all students show up at school. So it's a mischaracterization, I think, of the district court's decision. I mean, I think Parker has quite a bit to teach in the context of this case, if only by analogy, and I think the district court recognized that. But the decision wasn't based on the idea that this was a curricular decision. How would you describe the proper context in which the court seemingly made that statement? I think the court was recognizing the background, Massachusetts law and regulations that were applicable to its substantive due process analysis. Lewis requires consideration of the full context in which the claim arises, and I think the district court made it clear that that's what it was attempting to do, and the defendant's position is it did it quite well. But I think the district court was recognizing that parents' rights have some limitations in the school context. But more importantly, that, again, recognizing the state law and regulations, the DESE guidance, the background against which defendants acted. Counsel, can I move you to a different issue? You've, I think, made a number of arguments related to waiver, essentially saying that the plaintiffs didn't make certain arguments below, and one of the things that you argued was that the plaintiffs haven't sufficiently put forward their claim about the fundamental right to parent or to direct the upbringing of their kids. And I'm just trying to understand if that's what you're saying because I think they very clearly did do that. It's in their complaint, in the First Amendment complaint. It's in their briefing below to the district court. So what do you mean when you're arguing that they didn't make that claim? What I mean, Your Honor, is that, you know, plaintiffs rely on cases like Pierce v. Society of Sisters that stand for broad general propositions in this area, but plaintiffs have not identified a single case that establishes the specific right that is substantive due process right that they allege has been violated. But does somebody need to find a case that's squarely on point in order to make a claim? If you're making a claim about, you know, the case law, my claim as an attorney is the case law, the precedent, applies to this unique factual situation, and I therefore think I should win, isn't that what advocates do all the time? Well, in the substantive due process context, the right has to be clearly defined, and as the district court recognized, plaintiffs have relied on, you know, cases that stand for the proposition that there are parental rights in general, but nothing that comes close to establishing the rights asserted in this case. Further, for the purposes of the Doctrine of Qualified Immunity, while you don't need a case that's on all fours, you certainly need a consensus of persuasive authority or mandatory authority that would put a reasonable official on notice that his or her conduct violated the Constitution, and that's completely absent here. Counsel, I realize that you also are not responsible for what's put into amicus briefs, but it was striking that some of the amicus briefs defend the conduct of the school committee here by referring to individualized determinations that will precede decisions who perhaps inform the parents or not, and they seem to be defending the guidance from the Department of Education. That must be the case, because there are no individualized determinations about whether there should be disclosure under the school's policies. Isn't that correct? This is a categorical rule that when we get a disclosure from a student, we will not inform the parents of this request to use pronouns. Isn't that correct? There's no individualized determination at all. The only individualized determination there is is whether or not the child consents to having the school district share the child's assertion of their gender identity. And, of course, here it's important to note that when BF certainly made the assertion of their gender identity, they said, look, please give me time to talk to my parents about this. So, you know, in the context of this case, again, we have a child who's saying, look, I need time to talk to my parents about this, and that was respected. But you're right, Your Honor, the only individualized inquiry under the policy as alleged is whether or not the child consents to the school sharing with their parents. This is perhaps an unfairly large question to ask you at the end of your argument, but I'm going to ask it anyhow, because there are undeveloped references in the briefing to the right, that you have to factor in the rights of the student versus the rights of the parents. What are the rights of the student in this situation? Certainly it's the right to have their gender identity respected in school. They have the right. You know, one of the things the complaint complains about, for example, is that the guidance counsel allegedly talked to BF about bathroom use and choosing which bathroom to use. Well, you know, the case law that's developed today is fairly clear that under Title IX, the Equal Protection Clause, you have to allow transgender children to use the bathroom that conforms to their gender identity. And so a lot of the conduct that's complained of in the complaint is actually required either by Title IX, the Equal Protection Clause, or Massachusetts statutory law. But you seem to be asserting, bottom line, that the rights of the student to preclude disclosure of this request to use pronouns trumps the right of the parents to know what's going on with respect to the child's gender identity. Bottom line, you are asserting that, aren't you? Yes, Your Honor, bottom line we are. And I think what's notable is one of the cases that plaintiffs rely on, Arnold, which dealt with basically a student who was coerced into getting an abortion. The court went out of its way to say, look, whether or not to get an abortion is this student's choice. And we're not saying that the counselor, the guidance counselor, who is engaging in coercive conduct should have told the parents. That was up to the child. If the child wanted the parents told, that's fine. If the child didn't, that's also fine. It may be bad policy. It may be good policy to leave this decision up to the child's discretion. But it doesn't rise to constitutional dimensions. It's up to the local political process to address a policy that may be flawed. But because you might have a flawed policy, doesn't necessarily mean that policy shocks the conscience or can otherwise support a substantive due process claim. Thank you. Thank you, counsel. Thank you. Thank you, counsel. At this time, if the attorney for the appellants would please reintroduce herself on the record to begin. She has a three-minute rebuttal. Yes, thank you. Mary McAllister for the appellants. And a few points on rebuttal. Counsel claims that it was somehow vague as to what right was asserted here. And, of course, it was very much not that way. We rely on Troxell, Parham, and this court's case of Cologne in which they very specifically said that parents retain the right to make decisions regarding their child's care, custody, control. And in the Parham and Cologne cases, they were specifically dealing with committing the child to mental health care. And also in the Hassenfuss case,  the court said that parents retain the right to make decisions for their children. And they were talking about the fact that the school is not regarded as a custodial placement like a prison because the parents delegate that the child will be with them for a period of time for educational purposes, but the parents retain the right to make decisions such as about their gender identity, et cetera. And that is the right that we indicated. And in oral argument, we made it very clear to the district court, we are not arguing or we are not seeking recovery based on the parent's right to direct education, which was the Parker case, as the district court relied on. But we are seeking, we are challenging the effect it had on the parent's ability to make these decisions regarding care, custody, and control, which is the gender identity issue is not part of the pedagogical interests of the school. No, it's not just curriculum, but regulate the school environment is how the district court put it. Okay, yes, very much so. Counsel, can I ask you, just because we're running out of time, there was the alternative ruling that the district court made on qualified immunity against the individual defendants. You heard your opposing counsel talk about that a little bit. What is your best argument for why that ruling was incorrect? Well, again, because the district court relied upon the wrong parental, fundamental parental right and the wrong case law, then the court's comment about it not being clearly established was incorrect. But do you think, reviewing as we can, if there's any ground on which to uphold parts of the district court's ruling, is there any case that's even close that would have made it clear to the officials that their conduct here violated clearly established rights in these circumstances? Well, I think this court's decision in Colon, and certainly the decisions in Parham and Troxell, would make it clear to any reasonable school official that they can't interfere with the parents' decision-making regarding these issues outside of the education issues. The court's been very clear that the parents retain the right to make these other decisions, and those cases have been in effect for decades. Thank you very much, counsel. Thank you, counsel. That concludes argument in this case.